IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

CORNELL WADE,

    Petitioner,

v.

CHARLES DANIELS, Warden,
Federal Correctional Institution,
Sheridan, Oregon,

    Respondent.

Civil No. 05-189-HA

OPINION
AND ORDER

Stephen R. Sady
Office of the Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
    Attorney for Petitioner

1 - OPINION AND ORDER

Karin J. Immergut
United States Attorney
Craig J. Casey
Herbert C. Sundby
Assistant United States Attorneys
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Theresa Tolentino Talplacido
United States Department of Justice
Federal Bureau of Prisons
P.O. Box 13901
Seattle, Washington 98198
	Attorneys for Respondent

HAGGERTY, Chief Judge:

Petitioner brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He invokes this court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(4). He asserts that the Bureau of Prisons (BOP) has unconstitutionally denied him early release eligibility under 18 U.S.C. § 3621(e), the Equal Protection Clause, and the Due Process Clause of the Fifth Amendment. For the following reasons, the petition (Doc. #1) is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a federal inmate being housed at the Federal Correctional Institution (FCI) in Sheridan, Oregon (FCI Sheridan), pursuant to 1997 convictions of Possession with Intent to Distribute Cocaine Base and Possession with Intent to Distribute Cocaine Hydrochloride, in violation of 21 U.S.C. § 841(a)(1). Judge Frederick P. Stamp, Jr. of the Northern District of West Virginia sentenced petitioner to 127 months incarceration for each offense, to be followed by a four-year term of supervised release. His projected release date,

*via* Good Conduct Time, is October 16, 2006. If granted relief, he would be eligible for release in October 2005.

On July 9, 1998, while in custody at the FCI Manchester, petitioner asked to apply to the BOP's residential substance abuse treatment program (DAP). At that time, the BOP erroneously advised him that he was not eligible to apply because he needed to wait until he neared his release date. *See* Petition for Writ of Habeas Corpus, Ex. A ("Mr. Wade did express interest in going to the Residential Drug Abuse Program but he is not 'short' enough to apply right now."). BOP rules require an eligibility determination to be made when a prisoner requests admission into DAP, and there are no restrictions on when that request can be made. P.S. 5330.10 Ch.2 at 2.

On October 3, 2002, the BOP evaluated petitioner's case and determined that he was not eligible for early release because his conviction involved the use of a firearm, which resulted in a two-point enhancement on the sentencing calculation, thereby precluding eligibility for early release. On October 12, 2002, the BOP informed petitioner of his ineligibility for a sentence reduction under DAP. On February 18, 2003, while incarcerated at FCI Tucson, petitioner was placed on the DAP wait list. On September 16, 2003, while incarcerated at FCI Sheridan, petitioner declined to participate in the program and was removed from the wait list. On January 9, 2004, petitioner requested to be placed back on wait status. He began the program on March 26, 2004, and completed the residential portion of the program on December 23, 2004.

Petitioner has exhausted his administrative remedies. The BOP has refused eligibility, contending that merely expressing an interest in the program, as petitioner did in July 1998, is insufficient to constitute a formal request to be placed into the program. However, even if petitioner did request DAP placement in July 1998, the BOP argues that Program Statement 5162.04, adopted October 9, 1997, is the controlling policy. Program Statement 5162.04 lists offenses that preclude an inmate from receiving certain BOP benefits, and provides that when an inmate receives a two-level enhancement for possession of a firearm in relation to a 21 U.S.C. § 841(a) violation, the inmate is precluded from receiving early release consideration. *See* Petition for Writ of Habeas Corpus, Ex. B.

## ANALYSIS

18 U.S.C. § 3621(e) provides "that every prisoner with a substance abuse problem [shall] have the opportunity to participate in appropriate substance abuse treatment . . . ." In 1994, as an incentive for prisoners to seek treatment, Congress made one-year sentence reductions available to prisoners convicted of nonviolent offenses who successfully completed the substance abuse treatment programs. 18 U.S.C. § 3621(e)(2)(B).

As a result, in 1995, the BOP published a regulation to implement the early release incentive and defined a "nonviolent offense" to exclude any conviction accompanied by the possession of a firearm or other dangerous weapon. The Ninth Circuit rejected the BOP's interpretation, holding that the BOP cannot define "nonviolent offense" to exclude firearm possession when Congress defines "nonviolent offense" in precisely the opposite way.

*Davis v. Crabtree*, 109 F.3d 566, 569 (9th Cir. 1997); *see also Downey v. Crabtree*, 100 F.3d 662, 667 (9th Cir. 1996).

Accordingly, the BOP promulgated an interim regulation on October 15, 1997, and made the regulation effective on October 9, 1997. *See* 28 C.F.R. § 550.58(a)(1)(vi)(B) (1997); 62 F3d. Reg. 53,690; P.S. 5162.04 (Oct. 9, 1997); P.S. 5330.10 (Oct. 9, 1997). The 1997 interim regulation made ineligible for the early release incentive those prisoners currently incarcerated for an offense that involved the possession, use, or carrying of a firearm. 28 C.F.R. § 550.58(a)(1)(vi)(B). Relying instead on its discretion rather than on an interpretation of the term "nonviolent offense," the BOP's 1997 rule and program statements excluded exactly the same prisoners from early release eligibility who were ineligible under the old rules. *Id.*

The courts upheld this exercise of the BOP's discretion, but declined to consider whether the October 1997 rule and program statements were invalid because they were not implemented in accordance with the notice and comment provisions of the Administrative Procedures Act (APA). *Lopez v. Davis*, 531 U.S. 230, 244 (2001); *Grassi v. Hood*, 251 F.3d 1218, 1221 (9th Cir. 2001); *Bowen v. Hood*, 202 F.3d 1211 (9th Cir. 2000), *rev'g Gavis v. Crabtree*, 28 F. Supp. 2d 1264 (D. Or. 1998) (holding that the BOP's new interpretation conflicted with the unambiguously expressed intent of Congress, meriting no deference).

On December 22, 2000, the BOP replaced the 1997 interim regulation with a final regulation, which adopted the 1997 regulation without change. *See* 65 Fed. Reg. 80,745.

In May 2003, this court held in *Bohner v. Daniels*, 243 F. Supp. 2d 1171 (D. Or. 2003), that the 1997 rules were invalid because they were promulgated in violation of the APA. The court granted relief to prisoners who had been accepted into the program prior to the promulgation of the final rules in December 2000.

On June 27, 2005, the Ninth Circuit issued an opinion in *Bohner* and fifteen other similar cases decided by this court. *See Paulsen v. Daniels*, 2005 WL 1523204, __ F.3d __ (9th Cir. 2005). In it, the Court of Appeals held that the BOP "plainly violated the APA in its promulgation of the 1997 interim regulation" and that because the effect of the regulation was to deny petitioners sentence reduction, the petitioners clearly had sustained an injury in fact affording them standing. *Id.* at *3.

The court rejected the BOP's argument that even if the 1997 regulation violated the APA, it was harmless error because no petitioner was advised of his ineligibility for early release until after a reasonable notice-and-comment period would have expired. *Id.* at *4-6. The court explained that the BOP's "mistake [or procedural violation] clearly had a bearing on the procedure used. The [BOP's] violation of the APA was not merely technical; the [BOP] failed to provide the required notice-and-comment period before effectuating the 1997 interim regulation, thereby precluding public participation in the rulemaking." *Id.* at *4. Unlike other cases where harmless error had been found,

> here, petitioners were given no . . . opportunity [to participate in the rulemaking process before the rule was adopted]. In fact, the petitioners received no notice of any kind until after the [BOP] made the 1997 interim rule effective. That petitioners had an opportunity to protest an already-effective rule prior to the time it was applied to each of them does not render the APA violation

harmless.

*Id.* at *6.

After holding that the BOP violated the APA and that the violation was not harmless, the court turned to the question of remedy. It found that this court had correctly concluded that the appropriate remedy is to hold the BOP's 1997 interim regulation invalid. "Because the rule previously in force, the 1995 regulation, erroneously interpreted 18 U.S.C. § 3621(e)(2)(B), *see Downey*, 100 F.3d at 668, the applicable rule is the final rule that was effectuated on December 22, 2000. The subsequent enactment of the final rule can only have prospective effect." *Id.* at *7 (citing to *Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750, 758 (D.C. Cir. 1987)). "Therefore, the 1997 interim regulation is invalid as to those persons disqualified by it prior to the issuance of the final rule." *Id.*

Here, petitioner was convicted of a nonviolent offense and claims he is eligible for reduction of his period of custody under 18 U.S.C. § 3621(e). Contrary to the BOP's assertion, the court finds that petitioner's expressed interest in applying to the program in 1998, although perhaps artlessly stated, constituted an informal request to be considered for DAP placement. Thus, under Program Statement 5330.10, petitioner's eligibility for DAP should have been evaluated in July 1998. Defendant's argument that Program Statement 5162.04 is the controlling policy is unavailing because, like the 1997 regulation, the Program Statement was a substantive rule subject to the rule-making requirement of the APA and was promulgated without notice or comment. There is cogent evidence that but for the BOP's misadvice, petitioner's application to the program would have been acted upon in July 1998,

and the BOP's error should not inhere to the detriment of petitioner. Had the BOP considered petitioner's request in 1998, he should have been accepted into the program, only to be prospectively (and erroneously) found ineligible for early release consideration under the 1997 interim regulation, thereby placing him within the group of petitioners that are now deemed eligible for the early release incentive.

Pursuant to *Paulsen*, the only valid rules in effect at the time that petitioner requested admission to the program were those promulgated in 1995 as interpreted by *Downey* and *Davis*. Under the 1995 rules, petitioner is eligible for early release.

## CONCLUSION

For these reasons, petitioner's petition for writ of habeas corpus (Doc. #1) is GRANTED and it is ORDERED that the BOP deem petitioner eligible for a reduction of his period of custody. Upon petitioner's successful completion of DAP, the BOP shall grant a reduction of one year from petitioner's sentence.

IT IS SO ORDERED.

DATED this _30_ day of June, 2005.

_____
ANCER L. HAGGERTY
United States District Judge